# Smith v. Ewing, Appellant.

### [Marked to be reported.]

*Equity—Responsive answer—Corroborating circumstances.*

A sworn responsive answer to a bill in equity must stand, unless overcome by the oath of two witnesses, or by the oath of one witness and corroborating circumstances. It is not enough that the oath of the complainant stands uncontradicted by circumstances; it must be corroborated by circumstances.

By written ageement the complainant became the agent for the sale of defendant's sewing machines at a certain commission for each machine sold. Subsequently a new agreement was entered into, and across the old agreement were written the following words signed by both parties: " This agreement is by mutual consent determined and abrogated; all benefits arising to either party being fully satisfied." On a bill for an account plaintiff claimed that these words were not intended to cancel his claim for unpaid commissions for sales made under the first agreement. Defendant denied that anything was due plaintiff, and claimed that the indorsement upon the agreement was a full settlement of all claims. There was no corroboration of either witness. *Held*, that there was not sufficient proof to overcome the responsive answer.

*Partnership agreement—Construction of.*

Complainant and defendant entered into a partnership based upon the following offer by defendant: " I hereby offer you the option of acquiring an individual one-tenth interest in say $100,000 worth of the following assets of my business, viz.: store-fixtures, defaulters' accounts, sewing machine leases, sewing machines, new and old merchandise, patterns, accounts and bills receivable, cash, etc., as recorded on my books Jan. 1, 1886, upon the following plan, viz.: I will place to your credit upon the 'capital account' of my business the sum of $10,000 and will debit your personal account with an equal amount, say $10,000. Legal interest as against your 'personal account' shall be deducted from the profits accruing upon your 'capital stock' and the balance shall serve to liquidate your 'personal account.' Whatever of loss and shrinkage may result in any and all of the above named assets shall be regarded as the price and value of the good-will of the business." *Held*, that defendant could be charged only with a shrinkage of the original assets, and that plaintiff was entitled to ten per cent of the actual capital as it stood at the time of the dissolution.

Argued April 6, 1892. Appeal, No. 223, Jan. T., 1892, by defendant, D. S. Ewing, from decree of C. P. No. 2, Phila. Co., June T., 1890, No. 675, in favor of plaintiff, H. H. Smith. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Bill in equity for an account.

The facts appear by the opinion of the Supreme Court.

The case was referred to E. Hunn Hanson, as master, who, after stating the facts, reported, inter alia, as follows:

" By the agreement of April 25, 1891, it was provided, among other things, that H. H. Smith should receive three dollars from D. S. Ewing upon each lease of sewing machines accepted by him, when twenty dollars shall be paid by the lessee.

" On January 1, 1883, the said agreement was ended, and the following was indorsed upon it and signed by each party: ' This agreement is by mutual consent determined and abrogated, all benefits arising to either party being fully satisfied.'

" At this time, January 1, 1883, it was known that there were leases upon which twenty dollars had been paid, and subsequently it was found there were six hundred such. Standing alone the above-quoted clause would be interpreted to include everything connected with the agreement, as well moneys earned as those to be earned by H. H. Smith. But it has been found as a fact that at the time last referred to, January 1, 1883, H. H. Smith, in conversation with D. S. Ewing with respect to this indorsement on the contract, as the latter had written it, said that it did not express his purpose; for it seemed to mean that he was giving up whatever was due on the machines on which twenty dollars had been paid. To which D. S. Ewing replied, ' I have used the word " benefits " as that which you give up, and that means what is to be due in the future, not what has grown due already.' That H. H. Smith accepted this explanation and thereupon both signed the indorsement. This has been found to be the actual transaction in the face of the denial by D. S. Ewing, because it harmonizes with what an ordinary business man would do with respect to moneys that he knew he had earned; it is clear, circumstantial, and explicit, whereas the denial of D. S. Ewing is general; it does not set forth the conversation which admittedly preceded the abrogation of the agreement of 1881, and the reason given by him in support of his denial, that is, that H. H. Smith was making a better bargain by the agreement which took the place of that of 1881, to wit, that of January 1, 1883, is not persuasive unless it had been shown that the

giving up of what had been earned under the agreement of 1881 was a part of the consideration of the agreement 1883, and this was not done. Neither was this expressed as one of the 'terms,' which in the agreement of 1883 was set forth as 'mutually satisfactory' to the parties and as its consideration, as it would seem natural in such an agreement had it been intended.

"The evidence of H. H. Smith varies what would have been the legal interpretation of the abrogation of the contract; but this is legally permitted where the evidence shows that but for the oral stipulation the paper would not have been executed. This must be shown very clearly, however. Nothing could well have been more direct, clear and explicit than the testimony of H. H. Smith. The elements of it stand uncontradicted by circumstances, and it is thought that where there is such testimony it suffices, although it be that of a party in interest, uncorroborated by any other. Consequently it is found that the sum of $1,800 in this account is due from the defendant to the plaintiff. . . .

"The proper course in order to ascertain precisely what profits are due to the plaintiff would be to close out and wind up the business. It might also be done without ending the business by converting into cash the sources from which the profits appearing in the books had been ascertained. But on behalf of the plaintiff it was contended that he was entitled to be paid in money the amount of the profits appearing upon the books by reason of the agreement between him and the defendant, dated March 16, 1886.

"By that agreement D. S. Ewing stipulated to place to the credit of H. H. Smith upon the books $10,000 in 'capital account,' and to debit a like sum, with legal interest, to his personal account, against which latter account should be deducted the profits accruing to the 'capital account,' the balance serving to liquidate the personal account. This was done, and from the date of the agreement to the dissolution of the partnership, in May, 1890, the books show that upon the $10,000 the plaintiff has been debited with interest.

"The agreement also provided that whatever loss may result in the assets, estimated at $100,000 (of which the plaintiff's interest was one tenth), shall be deemed the price and value

of the good-will. That is to say, the assets amounting to $100,000 did not include good-will, and because they did not, and because the plaintiff did not get on this head what otherwise he would be entitled to, he should be compensated by not being required to bear whatever loss might happen to the assets of the estimated value of $100,000. It appears that there has been marked loss in the defaulters' account, but this account is enumerated among the assets which go to make up the $100,000. Doubtless it is true that of this loss but a part happened with respect to the defaulters up to 1886, and that other loss occurred among those who became defaulters after 1886. Nevertheless, it is upon this interpretation of the agreement, as well as by reason of the payment of interest by the plaintiff during the partnership upon the face value of the assets, it is concluded that he should not bear the loss which might and probably would result from the conversion of the estimated profits of $3,000 upon the books to their cash value. He is entitled, therefore, to receive the sum of $3,000, the profits estimated as due him."

Exceptions filed by defendant alleged, among other things, that the master erred (9) in reporting that plaintiff was entitled, subsequent to the agreement of Jan. 1, 1883, to any sum on account of sewing machines sold by plaintiff prior to that time ; (11) in not reporting that the parol evidence was not sufficient to vary the written canceling indorsement; (13) in so construing the agreement of March 16, 1886, as to make it incumbent upon defendant to account to plaintiff, upon dissolution, for the face value of indebtedness contracted after said agreement, whether said indebtedness could or could not be collected ; (20) in placing costs on defendant.

The exceptions were dismissed. Defendant appealed.

*Errors assigned* were, among others (9, 11, 13, 20) dismissal of exceptions, quoting them ; (23) in making decree recommended by master ; (24) decree as to costs.

*John G. Johnson,* for appellant.—The evidence was insufficient to overcome the answer.

Plaintiff was only entitled to ten per cent of the actual capital of the concern as it stood at the time of dissolution, not to ten per cent of a guaranteed capital of $100,000. The loss

and shrinkage which were equivalent to the good-will, were of the assets then on hand. Defendant was stipulating for an equivalent for himself, not for plaintiff. Is it likely that he agreed that all future losses, however great, should be borne by himself?

*J. M. Vanderslice*, for appellee.—The rule of law invoked by the appellant that the writing of Jan. 1, 1883, has not been contradicted by two witnesses, is not applicable in this case. The rule undoubtedly exists where the denial of the oral testimony given in contradiction is specific. Where the denial is general and where admittedly there were circumstances attending the modification of the writing, which circumstances are not alluded to by that party relying upon the writing, a chancellor will say, and ought to say, that the modification of the writing has not been denied in that sense which requires added force to be given to the oral testimony in contradiction of the modification: Thomas v. Loose, 114 Pa. 35; Ferguson v. Rafferty, 128 Pa. 337; Wanner v. Landis, 137 Pa. 61. Receipts are always open to explanation: Nichols v. Nichols, 133 Pa. 438.

Plaintiff was entitled on dissolution to ten per cent of $100,000. In their agreement of 1886, plaintiff and defendant agreed that whatever the shrinkage in the assets might be, that is to say, whatever amount their true value might fall short of $100,000, should be considered as offset by the value of the good-will which was not included in the assets named. Is it not just and equitable that the same thing should be done at dissolution? The full value of the assets is the same, the value of the good-will is the same, and the plaintiff's interest in the business is the same.

OPINION BY MR. CHIEF JUSTICE PAXSON, October 3, 1892.

The specifications of error in this case are too numerous to be considered seriatim. Grouped together they raise but two important questions, viz.: 1st. Was the appellee entitled to an allowance of three dollars for machines sold by him prior to the 1st day of January, 1883, upon which the sum of twenty dollars had not been paid anterior to date; and, 2d, Was the appellee entitled to ten per centum of the actual capital of the concern at the time of dissolution, or was he entitled to ten per centum of a guaranteed capital of $100,000?

Both of these questions were decided in favor of the appellee by the master, in which he was sustained by the learned judge of the court below.

It appears that on the 25th day of April, 1881, the parties entered into an agreement determinable upon thirty days' written notice by either, by which Smith agreed to become head salesman and manager of canvassers in the retail department of Ewing's business. He was to receive "in full compensation for all of services rendered a commission of three dollars upon each completed sale effected at retail, either on floor of store, or by any one of the canvassing force, and also a like commission of three dollars shall be allowed upon each lease accepted by the said D. S. Ewing from the above-named agencies when twenty dollars shall have been paid thereupon by the lessee thereof."

It is conceded that under this agreement the appellee acted until the 1st day of January, 1883. In the meantime he had made sales of a number of machines, upon some of which, at the last mentioned date, the stipulated price on account of twenty dollars had been paid. Upon other sales the twenty dollars had not been paid. On the 1st day of January, 1883, the parties entered into a new agreement, determinable at any time upon thirty days' written notice by either, with a stipulation, however, that the party giving such notice should pay a forfeit of five hundred dollars to the other. By this agreement the appellee was to act in the same capacity as before, but it was stipulated that he should receive in full compensation for all services rendered a commission of five per cent upon all net cash receipts arising from the leasing and sale of sewing machines to parties residing in the county of Philadelphia. All allowances for old machines, discounts to customers, and commissions or salaries due to the party effecting the sales or lease being first deducted from the retail or published prices at which the machines were to be leased or sold. Simultaneously with the making of this new agreement, the following words were written across the face of the agreement of 1881, and signed by the respective parties thereto :

"This agreement is by mutual consent determined and abrogated, all benefits arising to either party being fully satisfied." On the 22d day of May, 1885, the agreement of January 1, 1883, was canceled and abrogated by mutual consent. A new

agreement was made upon the same day, the particulars of which are not important in the present controversy. In the end it was canceled, and a new agreement dated March 16, 1886, was substituted therefor. It was upon this last agreement that the appellee rested his claim of partnership and his demand for an account. We will refer to it later.

The difficulty upon the first branch of the case arises upon the construction of the indorsement upon the agreement of 1881. Upon this point the parties differed radically in their testimony, each stating at some length what he understood it to mean at the time he executed it; the appellee contending that it was not his understanding that it was intended to cancel his claim for sales made under the agreement of 1881, while the appellant was equally emphatic in his testimony that it was a full settlement of any such claim. There was no corroboration of either witness in this respect. There was only the assertion of the one and the denial of the other.

There is no ambiguity in the language used by the parties as contained in the indorsement upon the agreement of 1881. This was conceded by the learned master who says: "The evidence of H. H. Smith (appellee), varies what would have been the legal interpretation of the abrogation of the contract." The learned master finds, however, that but for the oral stipulation the paper would not have been executed, and that the testimony of the appellee was so direct, clear and explicit as to overcome the testimony of the appellant. He further says: "The elements of it stand uncontradicted by circumstances, and it is thought that where there is such testimony it suffices, although it be that of a party in interest, uncorroborated by any other." It is just here the learned master appears to have misapprehended the rule in equity. To overcome the oath of the appellant there must be the oath of the appellee sustained by another witness or corroborated by circumstances which are the equivalent of a witness. It is not enough that the oath of the appellee "stands uncontradicted by circumstances," it must be corroborated by circumstances, and there is no such corroboration in the case.

The learned master was evidently led to his conclusion upon this point because he thought that which the appellee asserted harmonized "with what an ordinary business man would do with respect to moneys that he knew he had earned;" that

there was nothing to show that the giving up of what had been earned under the agreement of 1881 was a part of the consideration of the agreement of 1883, although the appellee had testified directly to that effect. The master also regarded the testimony of the appellant as evasive while to that of the appellee he attached more weight because of its directness.

An examination of the testimony does not lead us to this conclusion. The testimony of the appellant is as direct and explicit as we could expect. It is true, he does not give the details of a conversation, which he alleges, never occurred, but we are unable to see any such evasion or want of candor as would justify the master in rejecting his testimony. None of the reasons, given by the master for reforming this paper upon the parol evidence, is sufficient. This portion of the claim of the appellee should have been rejected.

Nor can we sustain the appellee's claim upon the second branch of the case. The evidence of the partnership was contained in a letter written by the appellant to the appellee, and which was accepted by the latter. The letter is as follows:

"PHILADELPHIA, March 16th, 1886.

" Mr. H. H. SMITH, PHILADELPHIA, Pa.

" Dear Sir—In no wise modifying or changing the terms of the existing contract between us, I hereby offer you the option of acquiring an individual one-tenth interest in say $100,000 worth of the following assets of my business, viz.: store-fixtures, defaulters' accounts, sewing machine leases, sewing machines, new and old merchandise, patterns, accounts and bills receivable, cash, etc., as recorded on my books January 1st, 1886, upon the following plan, viz.: I will place to your credit upon the ' capital account ' of my business the sum of $10,000 and will debit your personal account with an equal amount, say $10,000. Legal interest as against your ' personal account ' shall be deducted from the profits accruing upon your ' capital stock ' and the balance shall serve to liquidate your ' personal account.' Whatever of loss and shrinkage may result in any and all of the above named assets shall be regarded as the price and value of the ' good-will ' of the business. This proposition to you being wholly gratuitous, I reserve the right always to cancel so much thereof as may remain at the time incomplete.

" I would  further suggest, if  acceptable to you, that all the
benefit of  this arrangement shall commence on the first day of
January, A. D. 1886.

" Yours very truly,

" D. S. EWING."

We think the learned  court below and master erred in their
construction of  this  paper.   We  regard its meaning as clear.
The parties evidently regarded the assets at that time as worth
a hundred thousand dollars.   Among  those assets, however,
there were some  items as to which there might be a shrinkage.
The value of  the good-will was  not taken into an account in
estimating the value of the assets.   Under these circumstances,
it was  doubtless  thought reasonable that " whatever of  loss
and shrinkage may result in any and all of  the above-named
assets shall be regarded as  the price and value of  the good-
will  of the business."   As  the appellee had paid nothing for
the good-will, whatever may have  been its value, it does not
seem  unreasonable that the shrinkage, if  any, should be set
off against the good-will.   That this clause of  the agreement
in regard to shrinkage was intended to apply only to the assets
as they existed  at  the time the agreement was entered into, is
clear from the  language of  the agreement itself.   In terms it
applies only to " all of  the above-named  assets," and cannot,
by any reasonable construction, be  regarded as applicable to
shrinkage on future assets.   The  claim of  the appellee would
throw all the losses up to the time of dissolution upon the appel-
lant, while the appellee would  be entitled to a guaranteed capi-
tal of  $100,000, even though  the whole of  it should be lost by
business reverses or bad debts.   Few persons would be willing
to engage in business upon such  terms.   The most that the
appellee can  claim  under  the agreement is ten per centum of
the actual capital of  the concern as it stood at the time of  dis-
solution.   The appellant can only be  charged with a shrinkage
of  the  original assets or those in  existence at the date of  the
agreement.

It is not needed that we should consider the state of  the ac-
count between the parties.   It will have to go back to the mas-
ter and be restated in accordance with this opinion.   The costs
will depend upon the result.

The decree is reversed at the costs of the appellee.